J-S18001-24 & J-S18002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: C.I., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1283 WDA 2023 |

Appeal from the Order Entered October 3, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000055-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1318 WDA 2023 |

Appeal from the Order Entered October 3, 2023
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): AP 0055-2022

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: AUGUST 5, 2024**

In these consolidated cases, C.I. ("Mother") and P.L. ("Father")

(collectively, "Parents") appeal from the October 3, 2023 orders involuntarily

terminating their respective parental rights to their biological son, C.B., born in October 2018.[1] After careful review, we affirm.

We glean the relevant factual and procedural history of these cases from the certified record. The Allegheny County Office of Children, Youth, and Families ("CYF" or "the Agency") first became involved with this family shortly after July 25, 2020, when it received a report that Mother crashed an automobile she was operating while under the influence of opioids; C.B. was in the vehicle at the time. *See* Notes of Testimony ("N.T."), 9/29/23, at 34-35; CYF Exhibit 6 at 9-10 (unnumbered). In connection with these events, Mother was charged with, *inter alia*, endangering welfare of children ("EWOC").[2] Parents were not married and were not residing together. The Agency released C.B. to Father's custody and instituted a safety plan requiring that C.B. have no contact with Mother. *See* N.T., 9/29/23, at 35.

On August 12, 2020, however, C.B. was found by police officers "wandering around," alone and underdressed, in a park on the north side of Pittsburgh, Pennsylvania. *Id.* at 39. Mother was located nearby, "unconscious

---

[1] We have consolidated these cases *sua sponte* pursuant to Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal."). Instantly, Parents have raised similar issues concerning the same factual and procedural events.

[2] These charges were adjudicated in the Allegheny County Court of Common Pleas at docket number CP-02-CR-0008994-2020 ("Case No. 8994").

under a tree" and with thirty-two "stamp bags" of fentanyl and heroin in her possession. *Id.* at 40; *see also* CYF Exhibit 6 at 43-44 (unnumbered). CYF learned that Father had been involuntarily committed at Western Psychiatric Hospital following a police incident wherein he had threatened violence against his parents, after first leaving C.B. in Mother's care. *See* N.T., 9/29/23, at 37, 64, 97. C.B. was medically evaluated at Children's Hospital and tested positive for having ingested cocaine. *See id.* at 37, 43. The court immediately awarded CYF emergency protective custody of C.B., which was confirmed at a shelter care hearing on August 14, 2020.

Thereafter, C.B. was placed in a succession of different foster homes, which culminated in his pre-adoptive placement with J.M. ("Foster Mother"), where he has remained since December 2021. *See id.* at 4, 10-11, 75. He suffers from a rare form of lupus, which has severely compromised his immune system. *See id.* at 4-5. Unfortunately, C.B.'s health has deteriorated significantly during these proceedings. He underwent "five separate brain surgeries" between May 2023 and August 2023, which has also necessitated dozens of follow-up treatments at Children's Hospital. *See id.* at 5-6.

Foster Mother has been C.B.'s medical decisionmaker since January 2022 and has been solely responsible for his round-the-clock needs. *See id.* at 5-7. We also note that the certified record indicates that Parents have each received lifetime bans from all University of Pittsburgh Medical Center

("UPMC") properties, including Children's Hospital, due to a prior physical altercation between Parents. *See id.* at 12, 20-22, 70-71.

Contemporaneously, the Agency's investigation revealed that Father pleaded guilty to aggravated indecent assault in December 2007. *See* N.T., 9/29/23, at 35; *see also* CYF Exhibit 4 at 2; 18 Pa.C.S.A. § 3125(a)(8). As such, he is a lifetime registrant pursuant to Subchapter I of the Sentencing Code ("Subchapter I").[3] *See* 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A).

On October 7, 2020, C.B. was adjudicated dependent and his permanency goal was established as reunification with Parents. In furtherance of this goal, Mother was ordered to, *inter alia*, resolve her criminal charges, maintain sobriety, obtain appropriate housing, and address her mental health and intimate partner violence ("IPV") issues. *See* N.T., 9/29/23, at 43. Father was directed to maintain his sobriety, address his mental health issues, obtain appropriate housing, and participate in visitations with C.B. *See id.* at 63.

In permanency review orders entered between January 2021 and June 2023, Mother's compliance with her goals and overall progress was consistently documented as being minimal. Father's compliance was similarly rated as minimal between January 2021 and April 2022. Thereafter, however,

---

[3] *See* 42 Pa.C.S.A. §§ 9799.51, *et seq*. ("Continued Registration of Sexual Offenders"). Subchapter I applies to individuals who committed a sexually violent offense "on or after April 22, 1996, but before December 20, 2012." 42 Pa.C.S.A. § 9799.52(1); *see also* 42 Pa.C.S.A. § 9799.54(a)(1).

we note that Father demonstrated moderate to substantial compliance in permanency review orders entered between July 2022 and June 2023.

Mother's primary struggles throughout the dependency proceedings, and in the instant termination matter, were her criminal charges. *See generally* CYF Exhibit 6 (Mother's criminal records). As detailed above, Mother was charged with EWOC and narcotics-related offenses in connection with her actions on July 25, 2020, *i.e.*, driving while intoxicated with her son in the car. *See* N.T., 9/29/23, at 34-35; CYF Exhibit 6 at 9-11 (unnumbered). She was also charged with a separate count of EWOC and other narcotics offenses concerning the events of August 12, 2020, wherein Mother lost consciousness and abandoned C.B. in a Pittsburgh public park.[4] *See* N.T., 9/29/23, at 39-40; CYF Exhibit 6 at 20-21, 43-44 (unnumbered).

In November 2020, Mother was arrested, incarcerated, and charged with multiple counts of theft and forgery crimes in connection with allegations that she had cashed a forged check in an amount exceeding $2,000.[5] *See* CYF Exhibit 6 at 29-39. She was released in January 2021. *See* N.T., 9/29/23, at 51. On April 21, 2021, Mother pleaded guilty at both Case No. 7337 and Case No. 8994 to, *inter alia*, EWOC and was sentenced to an

---

[4] These charges were adjudicated in the Allegheny County Court of Common Pleas at docket number CP-02-CR-0007337-2020 ("Case No. 7337").

[5] These charges were adjudicated in the Allegheny County Court of Common Pleas at docket number CP-02-CR-0007993-2021 ("Case No. 7993").

aggregate term of three years of probation. *See* CYF Exhibit 6 at 17-18, 49 (unnumbered). The sentencing order in Case No. 7337 also lifted the criminal no-contact order prohibiting Mother from visiting with C.B.[6] *See id.* at 49.

In August 2021, Mother was arrested and charged with possession of heroin and public intoxication in Westmoreland County.[7] *See* CYF Exhibit 6 at 19-28 (unnumbered). She was incarcerated and, ultimately, pleaded guilty to the charges at Case No. 3403 and was sentenced to a term of incarceration of ninety days to twelve months. *See id.* at 27. Although Mother was found to have violated her existing probation at Case No. 7337, the criminal court in that case did not impose any supplemental sanctions. *See id.* at 50-51. Mother was paroled from incarceration on March 15, 2022.

Ultimately, Mother's parole and probation were revoked due to concerns about her ongoing sobriety and she returned to jail in December 2022, where she remained at the time of the termination hearing.[8] *See* N.T., 9/29/23, at 156-57. As discussed further *infra*, Mother has also participated in several inpatient treatment programs over the last three years.

---

[6] Contemporaneously, the Agency also modified C.B.'s safety plan in order to permit Mother to participate in supervised visits.

[7] These charges hale from the Westmoreland County Court of Common Pleas and appear at docket number CP-65-CR-0003403-2021 ("Case No. 3403").

[8] Mother was released from jail between March 2023 and May 2023 in connection with the Female Offenders Program. *See* N.T., 9/29/23, at 112.

Mother began supervised in-person visits with C.B. in July 2021. **See** N.T., 9/29/23, at 52-54. However, she only participated in three such interactions before she was incarcerated in August 2021 in connection with Case No. 3403. **See id.** at 56-57, 94. Thereafter, Mother began participating in sporadic virtual visits with C.B. in April 2022. **See id.** at 58-62, 94, 116-17. At best, Mother's contact with C.B. since his removal has been infrequent and inconsistent. Father's visits with C.B. have been more consistent, although he has also been unavailable to visit with his son for long periods of time due to his intermittent incarceration. **See id.** at 22, 102-03, 123-24.

On April 13, 2022, CYF filed a petition jointly seeking to involuntarily terminate Parents' parental rights to C.B.[9] Specifically, the Agency sought termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1),

_____

[9] KidsVoice was appointed to serve as C.B.'s legal interest counsel ("LIC") in conformity with 23 Pa.C.S.A. § 2313(a). Although it does not appear that C.B. had a guardian *ad litem* ("GAL") formally appointed during these termination proceedings, we note that KidsVoice served as C.B.'s GAL during the dependency proceedings detailed above. **See generally** CYF Exhibit 3. To the extent that KidsVoice may have operated in a dual GAL/LIC capacity in these termination matters, we note that the orphans' court determined that no conflict existed that would preclude KidsVoice appointment. **See** Order, 8/4/22, at 1 ("The court finds that no conflict exists that would prevent KidsVoice from accepting this appointment."). Thus, we discern no structural error in these appeals. **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1234-36 (Pa. 2020) (mandating "limited" *sua sponte* review by appellate courts to ensure children are appointed counsel in contested termination matters and the court has "determined that the child's best interests and legal interests" do not conflict in cases where a single attorney serves as dual GAL/LIC).

(2), (5), (8), and (b).  Concomitantly, CYF requested that Father's parental rights be terminated pursuant to Section 2511(a)(2), (5), (8), (11), and (b).

The orphans' court held a termination hearing on September 29, 2023, at which point in time C.B. was a few weeks shy of his fifth birthday.  Therein, the Agency adduced testimony from Foster Mother and CYS caseworkers Kellie Pavlonis and Rick Ogden.  Mother appeared and testified via video from the Allegheny County Jail.  Father was represented by counsel at the hearing, but he neither appeared nor testified at the proceeding.

On October 3, 2023, the orphans' court filed a joint order involuntarily terminating Parents' parental rights to C.B.  On October 23, 2023, Mother filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  On November 1, 2023, Father similarly filed a timely notice of appeal and a concise statement.  Thereafter, the orphans' court filed a responsive Rule 1925(a)(2)(ii) opinion.

Parents have submitted separate briefs in this Court, but their respective arguments are largely the same in that they each challenge the trial court's findings pursuant to Section 2511(a) and (b) on evidentiary and sufficiency grounds.  **See** Father's Brief at 6; Mother's Brief at 6.  We will address each of Parents' respective arguments, in turn.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  When applying this standard, the appellate court must

- 8 -

accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs

and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm the orphans' court's termination holding. ***See M.E.***, 283 A.3d at 830 (citing ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon Section 2511(a)(2), (11), and (b), which provides at the statutory level, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

- 10 -

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). Of particular note to the instant appeal, while a parent's incarceration is not automatically dispositive with respect to termination, it is a relevant and potentially determinative factor to consider pursuant to Section 2511(a)(2):

> [I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence' and the length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to [Section] 2511(a)(2)

*In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). Overall, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

- 11 -

As to Section 2511(a)(11), this Court has observed that "[t]he language of the statute provides that, when the parent is required to register as a sexual offender, the court may terminate the parent's rights." *Interest of R.C.*, 283 A.3d 380, 2022 WL 2815368, at *6 (Pa. Super. July 19, 2022) (non-precedential decision) (emphasis omitted). Of particular note, "Section 2511(a)(11) does not mandate further inquiry into the parents' actions. The sole condition is that the parent is required to register as a sexual offender[.]" *Id.* (citing *Interest of Z.F.Q.*, 272 A.3d 451, 2022 WL 34288, at *3 (Pa. Super. Jan. 4, 2022) (non-precedential decision)). Indeed, this Court has strongly suggested that litigants are "estopped" from challenging the validity of their registration status, or the underlying criminal convictions, in parental termination proceedings. *Z.F.Q.*, 272 A.3d at *4.

If a petitioner establishes adequate grounds for termination pursuant to Section 2511(a), we then turn to Section 2511(b), which requires that the court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests

- 12 -

and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.

Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (cleaned up). Rather, it is within the province of the orphans' court to "consider the totality of the circumstances when performing a needs and welfare analysis." *M.E.*, 283 A.3d at 839 (cleaned up). This Court has clarified that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents. *Id.* We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. *Id.*

We begin our analysis by noting that Father does not dispute the trial court's finding pursuant to Section 2511(a)(11). *See* Father's Brief at 15 (conceding that Father is a "lifetime registrant" under Pennsylvania's sexual offender registration laws); *see also* 18 Pa.C.S.A. § 3125(a)(8); 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A). Father, through his counsel, also previously conceded this issue at the termination hearing. *See* N.T., 9/29/23, at 26 ("I have

reviewed [F]ather's criminal record, and as this is a public record, I am well aware of what his charges are. He is required to be a lifetime Megan's Law offender."). Moreover, the relevant documentation submitted by CYF at the termination hearing independently established the validity of Father's predicate conviction. **See generally** CYF Exhibit 4. Accordingly, we find no abuse of discretion or error of law with respect to the orphans' court's holding that termination of Father's parental rights was warranted pursuant to Section 2511(a)(11). **See** Orphans' Court Opinion ("O.C.O."), 12/30/23, at 19-20.

We now turn to Mother's arguments challenging the orphans' court's findings pursuant to Section 2511(a)(2), wherein she alleges that "CYF did not present clear and convincing evidence that Mother had a repeated and continued incapacity, abuse, neglect, or refusal causing C.B. to be without essential parental care." Mother's Brief at 13. Mother also asserts that the orphans' court failed to consider her future potential to address her various incapacities. **See** Mother's Brief at 15 ("The trial court failed to consider the potential release that Mother could qualify for which could allow Mother to be in a position to complete her goals and reunify with C.B.").

The orphans' court determined that Mother's "repeated and continued incapacity or refusal" had caused C.B. to be "without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, or refusal cannot or will not be

remedied" by Mother. O.C.O. at 18-19. Our review of the certified record reveals ample support for the orphans' court's conclusions.

As detailed in the case history above, Mother suffers from a number of parental incapacities, namely, her substance abuse issues, criminal behavior, and ongoing incarceration. Ms. Pavlonis testified concerning Mother's arrests in July 2020 and August 2020, which resulted in her separate convictions for EWOC and narcotics-related offenses at Case No. 7337 and Case No. 8994. *See* N.T., 9/29/23, at 33-41. The criminal records introduced by CYF at the termination hearing similarly established that Mother continued to engage in criminal behavior related to her opioid addiction, which led to her additional convictions for forgery, theft, and possession of narcotics in separate incidents at Case No. 3403 and Case No. 7993. *See* CYF Exhibit 6 at 19-39 (unnumbered). Finally, Ms. Pavlonis testified regarding Mother's mental health and IPV issues, as well. *See* N.T., 9/29/23, at 47-48.

Overall, this evidence and testimony readily establishes that Mother suffered from repeated and continued parental incapacities. Accordingly, the first prong of Section 2511(a)(2) is satisfied in the case *sub judice*.

Moreover, the certified record also definitively establishes the second element of Section 2511(a)(2), *i.e.*, that Mother's incapacities have caused C.B. to be without essential parental care, control, and subsistence. As detailed above, Mother's actions have exposed C.B. to the dangers and trauma of an automobile accident and abandonment in a public place. Furthermore,

Mother's intermittent law-breaking, and her ongoing incarceration detailed above, have caused C.B. to be without critical parental support and care during his recent health crisis. *See*, *e.g.*, *S.P.*, 47 A.3d at 830. Moreover, Mother does not have a projected release date with respect to her current period of incarceration. Accordingly, we also find no abuse of discretion or error of law in the orphans' court's conclusion that the second aspect of Section 2511(a)(2) was met here.

Turning to the third and final facet of Section 2511(a)(2), the certified record also evinces that Mother cannot, or will not, remedy her incapacities. As set forth above, Mother's criminal behavior has extended throughout the lifetime of these proceedings. She has violated her probation and parole on multiple occasions and there is no verifiable indication of improvement. Along similar lines, Ms. Pavlonis, Mr. Ogden, and Mother collectively testified that Mother has unsuccessfully sought treatment for her substance abuse through at least five different providers—Pyramid, Greenbriar, Guadenzia, Cove Forge, and Passages. *See* N.T., 9/29/23, at 43-45, 87-88, 113-15, 175. Additionally, Ms. Pavlonis stated that Mother was referred for two different drug and alcohol evaluations through the Pennsylvania Organization for Women in Early Recovery ("POWER"), which she also failed to complete. *See id.* at 47. Ms. Pavlonis testified that CYF has "never" been able to verify that Mother has been living a "sober lifestyle." *Id.* at 46-47. Similarly, Ms. Pavlonis testified that Mother has never followed-up on her various referrals

for mental health and IPV treatment. *See id.* at 47-49. Viewing this evidence collectively, we conclude that the certified record indicates that Mother is unable, or unwilling, to remedy her parental incapacities.

Based upon the foregoing, we find no abuse of discretion or error of law in the orphans' court's determination that termination of Parents' respective parental rights was warranted pursuant to Section 2511(a).

We now turn to an assessment of Section 2511(b), which affords primary consideration to the developmental, physical and emotional needs and welfare of the child. *See* 23 Pa.C.S.A. § 2511(b). With respect to the bonding analysis mandated by our Supreme Court, it seems clear that Parents share a bond with C.B., as indicated by the testimony of Ms. Pavlonis. *See* N.T., 9/29/23, at 75, 137 (averring that C.B. recognizes and shows excitement and happiness while separately interacting with Parents). Nonetheless, Ms. Pavlonis also testified that Foster Mother and C.B. have a "very strong bond," and that C.B. refers to her as "Mama" and turns to Foster Mother for support during his health struggles. *See id.* at 76-77.

More importantly, Ms. Pavlonis unequivocally testified that Parents were both unable to provide C.B. with "security and safety," or to adequately provide for his extraordinary medical needs. *See id.* at 77. In particular, both Ms. Pavlonis and Mr. Ogden averred that Parents' ongoing ban from UPMC properties would create a significant impediment to C.B.'s ongoing medical treatment at Children's Hospital. *See id.* at 71, 137. Overall, Ms.

Pavlonis opined that C.B. would not suffer any detriment if Parents parental rights were involuntarily terminated. **_See id._** at 77.

Based upon the foregoing, we observe no abuse of discretion or error of law in the orphans' court's holding that termination of Parents' parental rights was also appropriate pursuant to Section 2511(b). Since our review indicates that the termination of Parents' parental rights was in conformity with the provisions of Section 2511(a) and (b), we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/5/2024